**SO ORDERED.**

**SIGNED February 18, 2016.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

```
                UNITED STATES BANKRUPTCY COURT
                 WESTERN DISTRICT OF LOUISIANA

IN RE:

DAVID PATRICK KEATING                          CASE NO. 15-MP-501
----------------------------------------------------------------
    ORDER ON APPLICATION FOR REINSTATEMENT AND REFERRAL TO THE
        DISTRICT COURT FOR ADDITIONAL DISCIPLINARY ACTION
----------------------------------------------------------------
```

The present matter before the court is an Application For Reinstatement filed by David Patrick Keating. The court previously suspended Mr. Keating from practice before the U.S. Bankruptcy Court for the Western District of Louisiana for conduct that occurred in <u>In re New Century Fabricators, Inc.</u>, No. 14-50652 (filed May 2014). The court took the application under advisement and now rules as follows.

### BACKGROUND

In September 2014, the court held a hearing in the <u>New Century</u> case on an order to show cause why Mr. Keating should not be

subject to sanctions and disciplinary action on account of false and misleading statements made in that case.  The court ultimately concluded that Mr. Keating made material misrepresentations in pleadings filed on behalf of New Century, and that he repeated these misstatements during oral arguments on those pleadings.  The court concluded that this conduct violated Rule 9011 of the Federal Rules of Civil Procedure as well as counsel's duty of candor under Rule 3.3 of the Louisiana Rules of Professional Conduct.  The court imposed monetary sanctions of $15,000.00 against Mr. Keating, ordered Mr. Keating to complete 12 hours of continuing legal education certified as ethics or professionalism, and suspended Mr. Keating from practice before the  Bankruptcy Court of the Western District of Louisiana for a period of 90 days. The court ordered that the $15,000 be paid to First Capital – the largest secured creditor in the New Century case – as partial compensation for the fees incurred by First Capital to address the misrepresentations made on behalf of New Century. The events leading up to this disciplinary action, and the court's findings with respect to its disciplinary action, is set fort in the April 1, 2015 order, a copy of which is included as Attachment 1 to this ruling.

After entry of the April 1st suspension order, Mr. Keating represented clients at an official meeting of creditors conducted under 11 U.S.C. § 341 based on his belief that the April 1st order

only prohibited his appearance at court hearings.  To avoid any dispute or confusion over the discipline imposed on Mr. Keating, the court issued an order dated April 7, 2015, stating that Mr. Keating's suspension includes "any practice before the bankruptcy court," including section 341 meetings.  A copy of this April 7th order is included as Attachment 2 to this ruling.  On April 9, 2015, the court entered an additional order informing Mr. Keating's clients of his suspension and directing the clerk's office to file the notice of suspension in every open case in which Mr. Keating represented a debtor or other party. The order explained that Mr. Keating's suspension precluded him from performing any work on behalf of clients.  This April 9th order is included as Attachment 3.

On May 22, 2015, the court entered an order denying Mr. Keating's motion for reconsideration of the sanctions and suspension.  In this order, the court also assessed additional sanctions on Mr. Keating for failing to disclose fees that he obtained from New Century.  Specifically, the court ordered disgorgement of $15,000.00 in fees that were not disclosed, and ordered Mr. Keating to earn an additional 3 hours of ethics or professionalism CLE.  The court ordered Mr. Keating to pay these disgorged fees to First Capital as additional compensation for the fees incurred by First Capital to address the misrepresentations

that were the basis of the April 1st suspension order. A copy of this May 22nd order is included as Attachment 4.

Following his suspension, Mr. Keating transitioned his cases to other counsel. However, schedules filed in several cases indicated that Mr. Keating may have continued to perform work on behalf of clients in violation of the court's suspension order. On June 19, 2015, the court entered an order to show cause and set a hearing to determine whether the court's prior orders suspending Mr. Keating had been violated. That order was entered in <u>In re Kevin Paul Brown</u>, case number 15-50497. A copy of this June 19th order to show cause is included as Attachment 5. In that order, the court also ordered the debtor, Kevin Brown, to submit a sworn affidavit identifying the dates of each meeting he had with Mr. Keating. Mr. Brown complied with the order and submitted an affidavit. Mr. Brown's new counsel, Mr. Simmons Sandoz, also submitted an affidavit. Mr. Brown's affidavit states that he met with Mr. Keating twice. The first meeting occurred on April 8, 2015, a week after the court entered the original April 1st suspension order, and the day after the second order was entered. Mr. Keating met with Mr. Brown again on April 21, 2015. A copy of Mr. Brown's affidavit is included as Attachment 6. Mr. Sandoz's affidavit states that he received a file containing approximately 20 documents pertaining to Mr. Brown's case from Mr. Keating. This

-4-

file included schedules signed by the debtor as well as a signed Chapter 13 Plan. Mr. Keating also forwarded attorneys' fees received from Mr. Brown. A copy of Mr. Sandoz's affidavit is included as Attachment 7.

Prior to the hearing on the court's order to show cause in the Brown case, Mr. Keating's counsel requested a conference with the court. Mr. Keating's counsel informed the court that Mr. Keating was closing his bankruptcy practice and was seeking non-legal employment in Texas. The inference to the court was that it was unlikely that Mr. Keating would resume his law practice in the near future. The court was also informed of a pending Louisiana state disciplinary proceeding against Mr. Keating. Mr. Keating's counsel also indicated that he would attempt to resolve any outstanding disputes with First Capital, including the attorneys' fee sanctions imposed by the court. Based on the court's conference with counsel and that representations made concerning the closure of Mr. Keating's bankruptcy practice, the court withdrew and vacated the June 19th order to show cause on August 13, 2015.

On December 11, 2015, Mr. Keating filed an application for reinstatement, seeking his full reinstatement to practice before the Bankruptcy Court of the Western District of Louisiana. In that application, Mr. Keating represented that he had satisfied the monetary and non-monetary sanctions imposed by the court. With

respect to the monetary sanctions, Mr. Keating represented that he had entered into an agreement with First Capital to pay $15,000 of the $30,000 of sanctions awarded. A continuing legal education transcript shows that he earned his required CLE between October 30, 2015 and November 5, 2015. Mr. Keating's motion for reinstatement, however, is silent on the court's show cause order in the <u>Kevin Brown</u> case and the question raised in that order as to whether the work performed by Mr. Keating in the Brown case violated the court's order suspending him from practice. Accordingly, the court set his application for reinstatement for hearing on January 6, 2016.

## DISCUSSION

Mr. Keating does not dispute that he met with Mr. Brown on two occasions after the court issued its two suspension-related orders on April 1st and April 7th. Rather, he contends that he had an ethical obligation to protect his clients' interests and assist them in the orderly transition of their cases to other lawyers. Mr. Keating contends that Mr. Brown faced a foreclosure proceeding near the end of April or beginning of May, which required immediate attention to ensure that Mr. Brown's interests were not prejudiced. According to Mr. Keating, his meetings with Mr. Brown were merely to ensure the orderly transition of Mr. Brown's case to another lawyer. Mr. Keating also contends that the April 1st and April 7th

-6-

orders did not clearly set forth the limitations on his practice, and that it was not until he received the general April 9th order entered in each of his cases that he understood that he was precluded from performing work on behalf of clients.

Mr. Keating's arguments are without merit. Mr. Keating's work in the Kevin Brown case goes far beyond merely offering his services to aid in the transition of the case to new counsel. Mr. Keating met with Mr. Brown for the first time after the suspension orders were entered precluding him from practice before the bankruptcy court. Instead of informing Mr. Brown that he could not represent him and directing Mr. Brown to Mr. Sandoz, who had taken over many of Mr. Keating's cases, Mr. Keating met with Mr. Brown twice, the second time weeks after the suspension. The fact that a foreclosure proceeding was scheduled for three to four weeks later was not a justification for Mr. Keating to perform the work he did on behalf of Mr. Brown instead of merely directing Mr. Brown to Mr. Sandoz. In many cases, bankruptcy counsel have to prepare and file a bankruptcy case on an expedited basis when clients appear at their offices on the eve of a foreclosure proceeding. Even more importantly, Mr. Keating misrepresented the extent of the work he performed on behalf of Mr. Brown. During the evidentiary hearing on his application, Mr. Keating provided the following account under oath:

-7-

| | |
|---|---|
| The Court: | Okay. And you prepared some pleadings for Mr. Brown? |
| Mr. Keating: | Actually, just started to initially prepare some things. There was an order from this court that came out on the 9th, that clarified some previous orders. We did not do any work on that case after that order came out. |
| The Court: | Okay. So, your position was that the prior orders didn't bar you from preparing any pleadings or schedules for Mr. Brown? |
| Mr. Keating: | Well Your Honor, all I did as far as preparations were, I just basically entered his name, address and basic information. We didn't really start any pleadings, I guess per se, as far as entering a lot of information. Basically, just basic information there is when you normally do the start of the case. We didn't go into all of the completion of the schedules and all of that. |
| The Court: | So, the schedules were not completed? |
| Mr. Keating: | They were not completed. |

Contrary to Mr. Keating's sworn testimony, Mr. Sandoz's affidavit states that he received numerous pleadings and schedules **signed** by Mr. Brown, including a **signed** Chapter 13 Plan. According to Mr. Sandoz's affidavit, he received:

1. Draft of schedules-signed by debtor-undated.

2. Chapter 13 Plan-signed by debtor-undated.

3. E-dec-signed by debtor-undated.

4. Contract for Chapter 13 bankruptcy services-signed by debtor-undated.

5. Client bankruptcy questionnaire-signed by

-8-

>             debtor-dated April 8, 2015.
>
>        6.   Best case bankruptcy-flash drive/thumb drive-
>             containing drafted schedules.

Mr. Sandoz's affidavit also indicates that Mr. Keating forwarded attorneys fees to Mr. Sandoz, so Mr. Keating also collected attorneys fees from Mr. Brown. This affidavit refutes Mr. Keating's sworn testimony to this court that he did little more than start pleadings by entering names, addresses, and "basic information." Indeed, a Chapter 13 Plan signed by the debtor is typically the culmination of the pre-filing work that a lawyer must perform on behalf of a client as the plan is based upon the information entered in the schedules.

The court also finds Mr. Keating's argument that he was confused by the court's April 1st and April 7th orders to be without merit. The April 1st order provided that Mr. Keating was suspended "from filing new bankruptcy cases, filing pleadings in any existing cases and from appearing in United States Bankruptcy Court for the Western District of Louisiana for a period of ninety (90) days from the date of this order." If the contours of his suspension were unclear, the April 7th order specifically provides that Mr. Keating was suspending from "any practice before the U. S. Bankruptcy Court." For Mr. Keating to now contend that the terms of his suspension were ambiguous when he met with Mr. Brown on

-9-

April 8th is disingenuous at best. Suspension from "any practice before the U. S. Bankruptcy Court" clearly applies to the work that Mr. Keating performed for Mr. Brown.

Finally, Mr. Keating contends that his suspension from practice has been far longer than the original 90 days imposed by the court. Again, Mr. Keating's argument is disingenuous at best. This argument does not take into account that Mr. Keating informed the court that he was closing his practice in an effort to resolve the court's June 19th order to show cause. Moreover, Mr. Keating did not even begin to address the CLE requirements in the suspension order until October 30, 2015, less than 2 months before filing his Application for Reinstatement.

**REFERRAL AND RECOMMENDATION**

In sum, the court finds that Mr. Keating's work on behalf of Mr. Brown exceeded the work required to facilitate an orderly transition of Mr. Brown's case to another lawyer, and thus violated this court's order suspending him from practice. According to Mr. Brown's affidavit, his first meeting with Mr. Keating occurred on April 8th. On April 8th or thereafter, Mr. Keating obtained a signed client representation agreement from Mr. Brown as well as attorney fees. Mr. Keating also prepared multiple schedules including a signed Chapter 13 Plan. Mr. Keating's contention that he merely started to prepare schedules for Mr. Brown is yet again

-10-

a lapse in candor to this court. The court concludes that Mr. Keating violated the April 1st and April 7th orders suspending him from practice before the bankruptcy court.

The local rules for the United States District Court for the Western District of Louisiana provide a disciplinary procedure for lawyers who practice before the district court and the bankruptcy court. <u>See</u> LR 83.2.10. These procedures allow for individual judges to impose a suspension of up to 90 days. In the present case, however, in light of Mr. Keating's prior conduct, his violation of this court's prior suspension order, and his continuing lack of candor with respect to the work he performed on behalf of Kevin Brown, this court concludes that Mr. Keating should be subject to suspension for a period longer 90 days. Accordingly, the court will refer this matter to the Chief District Judge of the Western District of Louisiana pursuant to LR 83.2.10. The court recommends an additional suspension of at least one year. Although Mr. Keating's original suspension lapsed in July 2015, the court recommends that this additional suspension not take into account the period of time after July 2015, when Mr. Keating did not practice. The only reason that the court did not address the breaches committed in the <u>Kevin Brown</u> case during this time is the representation by Mr. Keating that he was closing his practice. Moreover, Mr. Keating did not begin addressing the non-monetary

-11-

aspects of his sanction – the CLE requirements – until late October 2015.

The court, therefore, **DENIES** the Application For Reinstatement in its entirety. The court further **REFERS** this matter to the Chief District Judge for the Western District of Louisiana for additional disciplinary action pursuant to LR 83.2.10.

###